IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BYARS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY | : | NO. 13-6452 |

MEMORANDUM

Dalzell, J.                                                                          January 12, 2015

## I.       Introduction

We consider here defendant State Farm Mutual Automobile Insurance Company's ("State

Farm") partial motion for summary judgment, plaintiff John Byars's motion for summary

judgment, and plaintiff's motion to amend his complaint.

State Farm moves for partial summary judgment to limit plaintiff's damages to $50,000,

arguing that a prior state court judgment collaterally estops him from recovering more. Plaintiff

moves for summary judgment, arguing that the state court's findings, and principles of res

judicata, entitle him to uninsured motorist coverage from State Farm as a matter of law. Plaintiff

further seeks to amend his complaint to assert a cause of action for bad faith against State Farm.

We have jurisdiction pursuant to 28 U.S.C. § 1332.


## II.      Standards for Summary Judgment

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each
> claim or defense -- or the part of each claim or defense -- on which
> summary judgment is sought. The court shall grant summary
> judgment if the movant shows that there is no genuine dispute as to
> any material fact and the movant is entitled to judgment as a matter

of law. The court should state on the record the reasons for granting or denying the motion.

We treat cross-motions for summary judgment as if they were two distinct, independent motions. Arnold Pontiac-GMC, Inc. v. General Motors Corp., 700 F. Supp. 838, 840 (W.D. Pa. 1988). In evaluating each motion, we must consider the facts and inferences in the light most favorable to the non-moving party. Marzano v. Computer Science Corp. Inc., 91 F.3d 497, 501 (3d Cir. 1996).

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted).  If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial. Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of

the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at

249).

We recount the materially undisputed facts pertinent to resolving the motions before us.

## III.    Factual Background

This case arises from a motor vehicle accident on October 3, 2009. Def. Brief at 2; Pl.

Brief at 2. Alexander Funtow, a third party not before this Court, hit plaintiff's pick-up truck

with his car.  Def. Brief at 2; Pl. Brief at 2. After the accident, Funtow assaulted plaintiff. Def.

Brief at 2; Pl. Brief at 2. Funtow was uninsured. Def. Brief at 3; Pl. Brief at 3. Plaintiff had an

automobile insurance policy with State Farm.

Plaintiff's automobile insurance policy with State Farm (the "Policy") contained an

uninsured motor vehicle provision providing that State Farm would pay plaintiff's compensatory

damages for bodily injuries that the plaintiff was legally entitled to recover from the driver of an

uninsured motor vehicle.[1] The Policy included a provision governing fault and determining the

amount of damages in the event of an accident with an uninsured motor vehicle:

> **Deciding Fault and Amount – Coverages U and U3**
> 1.        a. The *insured* and *we* must agree to the answers to the
> following two questions:

---

[1] That portion of the Policy read:
> **Insuring Agreement – Coverages U and U3**
>        *We* will pay compensatory damages for ***bodily injury*** an
> ***insured*** is legally entitled to recover from the owner or driver of an
> ***uninsured motor vehicle***. The ***bodily injury*** must be:
>        1. sustained by an ***insured***; and
>        2. caused by an accident that involves the ownership,
>        maintenance, or use of an ***uninsured motor vehicle*** as a
>        motor vehicle.
> The amount *we* will pay for damages is subject to the limitations of
> Title 75 of the Pennsylvania Consolidated Statutes.
> Pl. Brief Ex. F at 18.

(1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

(2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction, against:

(a) *us*;

(b) the owner and driver of the *uninsured motor vehicle*, unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

(c) any other party or parties who may be legally liable for the *insured's* damages;

(2) consent to a jury trial if requested by *us*;

(3) agree that *we* may contest the issues of liability and the amount of damages; and

(4) secure a judgment in that action.

The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us.*

Pl. Brief Ex. F at 19.

On October 5, 2009, plaintiff called State Farm and provided a statement regarding the October 3 incident, including both the details of the car accident and the subsequent assault. Pl. Brief Ex. A. On October 21, 2009, State Farm sent plaintiff a letter denying coverage, explaining that "[b]ased on our investigation and the facts provided to use [sic], there will be no coverage for the injuries sustained from this incident under your State Farm Automobile Policy as the injuries were not as a result of the ownership, maintenance or use of a motor vehicle." Id. Ex. B.

Plaintiff then filed two lawsuits in the Philadelphia Court of Common Pleas, the first on September 6, 2011 against Funtow and Stephen Tuttle, the alleged owner of the vehicle Funtow

operated. Def. Brief at 2; Pl. Brief at 2, and the second seeking uninsured motorist benefits,

against State Farm on October 1, 2013. Def. Brief at 1; Pl. Brief at 3. State Farm removed to this

Court on November 6, 2013. See Notice of Removal. We stayed this case pending the outcome

of the state court proceeding against Funtow. See February 5, 2014 Order.

Funtow failed to answer the complaint, and the Philadelphia Court of Common Pleas

entered a default judgment against Funtow on January 18, 2012. Def. Brief at 2; Pl. Brief at 7.

On June 30, 2014, the Honorable Lisette Shirdan-Harris held a bench trial to assess damages

against him. Pl. Brief Ex. D. Based on plaintiff's testimony -- including evidence of his injuries

and damages, medical records, bills, and reports -- Judge Shirdan-Harris entered judgment

against Funtow and in favor of plaintiff in the amount of $50,000. Pl. Brief Ex. E at 2. On July 2,

2014, Judge Shirdan-Harris entered a supplemental order declaring that plaintiff had met his

burden of establishing that "Alexander Funtow's negligence was the factual cause in bringing

about [plaintiff's] injuries from the October 3, 2009 incident." Id. Ex. E at 1. After plaintiff

informed us that his case against Funtow had concluded, and we determined that we retained

jurisdiction over the case, we set a briefing schedule and ordered the parties to complete

discovery. See August 12, 2014 Order. The parties then filed their motions for summary

judgment, which we now address.

## IV.     Defendant State Farm's Motion for Partial Summary Judgment

State Farm argues that collateral estoppel bars plaintiff from re-litigating the issue of

damages. Def. Brief at 4. Plaintiff argues that, as claimed in his own motion for summary

judgment, he is entitled as a matter of law to coverage from State Farm, and, should we so

decide, "he would be bound by the $50,000 findings on damages." Pl. Resp. at 3-4. However,

plaintiff argues, if we do not find that he is entitled to coverage as a matter of law then he

"should be provided the opportunity to fully litigate the merits (and explain the difference of negligence versus assault) of his damages in the present venue." Id. at 4.

Because we have jurisdiction over this case pursuant to 28 U.S.C. § 1332, we must apply Pennsylvania law on collateral estoppel, also known as issue preclusion. See Public Serv. Mut. Ins. Co. v. Cohen, 616 F.2d 704, 707 (3d Cir. 1980) (district court sitting in diversity correctly applied Pennsylvania law to issue of collateral estoppel); M & M Stone Co. v. Hornberger, 2009 WL 3245460, *7 (E.D. Pa. Sep. 30, 2009) (Gardner, J.) ("Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal district court must give the same preclusive effect to a state court judgment that the adjudicating state would give."); see also Ranger Ins. Co. v. General Accident Fire & Life Assurance Corp., Ltd., 800 F.2d 329, 330 (3d Cir. 1986) (citing 28 U.S.C. § 1738 on full faith and credit).

According to Pennsylvania law, the doctrine of collateral estoppel bars re-litigating an issue determined in a previous action if: (1) the issue decided in the earlier action is identical to the issue presented in the later action, (2) there was a final adjudication on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[2] Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996).

---

[2] Some courts include an additional fifth factor, that the determination in the prior proceeding was essential to the judgment. See Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005). As defendant State Farm notes, not all Pennsylvania courts include the fifth factor listed in Kiesewetter. Def. Brief at 4 (citing Witkowski v. Welch, 173 F.3d 192, 203 n. 15 (3d Cir. 1999)).

We agree with our Court of Appeals in Witkowski that "[w]hether there are four or five formal elements to the doctrine is not of consequence, nor is it for us to decide. In any event, the doctrine is essentially the same under either analysis.  Even with just the four formal elements, clearly there must be a nexus between the first two. In other words, the identical issue must have been necessary to final judgment on the merits." Witkowski, 173 F.3d at 203 n. 15 (internal quotation marks omitted). We will therefore use the four-part test from Shaffer.

Parties typically use collateral estoppel in either a defensive or offensive posture.

Offensive collateral estoppel would describe the case where a plaintiff seeks to foreclose a

defendant from litigating an issue that the defendant previously litigated unsuccessfully in an

action with another party. Shaffer, 673 A.2d at 874. Defensive collateral estoppel would describe

a case where a defendant tries to bar a plaintiff from asserting a claim that the plaintiff has

previously litigated and lost against a different defendant. Id. (citing Parklane Hosiery Co., Inc.

v. Shore, 439 U.S. 322, 326 n.4 (1979)).

Plaintiff argues that he is not collaterally estopped from litigating the amount of his

damages because the issue decided in the state court proceeding is not identical to the issue

before us, and he also did not have a full opportunity to litigate the issue in state court. Pl. Resp.

at 3.

Defendant State Farm replies that the issue at hand and the issue in the third party

litigation were the same -- namely, "the amount of plaintiff's damages resulting from the alleged

negligence of Funtow, the uninsured motorist." Def. Reply at 1. State Farm argues that plaintiff

had a full and fair opportunity to litigate the issue in state court, where "[h]e had no opponent."

Id. at 2.

We must first determine whether the doctrine of collateral estoppel applies, using the test

as set forth in Shaffer. As we explain below, we find plaintiff is collaterally estopped from

litigating the issue of his damages resulting from the motor vehicle incident with Funtow.

First, the issue decided in the state court case is identical to the issue in this case. See

Shaffer, 673 A.2d at 874 (describing the first prong of the four-part test). At the assessment of

damages hearing in the state court action, plaintiff presented evidence as to the nature of his

injuries, and therefore the amount he was entitled to recover, resulting from Funtow's car

striking his pick-up truck.[3] Plaintiff testified as to how the accident occurred and the resulting injuries to his knee and shoulder. See Pl. Brief Ex. D at 13-15.

In the case before us, plaintiff seeks uninsured motorist benefits from State Farm. See Complaint at ¶¶ 8-16. The Pennsylvania Financial Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. § 1731(b) (1984), provides that uninsured motorist coverage protects persons "who suffer injury arising out of…the use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles." Plaintiff's Policy provides that State Farm will "pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle" where the bodily injury is sustained by the insured and caused by an accident involving the use of an uninsured motor vehicle. Pl. Brief Ex. F at 18 (emphasis omitted).

There are therefore two issues in this case: whether plaintiff is entitled to coverage from State Farm, and, if so, in what amount. By the terms of his policy, plaintiff would only be entitled to those compensatory damages resulting from bodily injuries sustained in the accident. And in fact, that is precisely what plaintiff litigated at the assessment of damages hearing in the state court action -- the amount of money Funtow, the driver of the uninsured motor vehicle, was liable to plaintiff for as a result of his injuries from the accident, not the subsequent assault. Thus, that issue in the prior action is identical to this issue in the case before us.

Second, the issue of plaintiff's damages reached a final adjudication on the merits. See Shaffer, 673 A.2d at 874 (describing the second prong of the four-part test). In the state court

---

[3] See Pl. Brief Ex. D (hearing testimony transcription). Plaintiff's attorney summarized the nature of the motor vehicle accident and said, "The vehicles came to rest. At that point, Mr. Byars suffered some pain, some injury. There was subsequently an assault. That is all dealing with the face and head and chest; something separate than what we're dealing with here. We're not seeking recovery on the assault." Id. at 6.

action, plaintiff obtained a default judgment against Funtow and, after an assessment of damages hearing, a judgment in the amount of $50,000 against Funtow. See Pl. Brief Ex. E.

Though default judgments do not meet the requirements of collateral estoppel since the issues are not actually litigated, see Wilson v. Reliance Ins. Co., 138 F. App'x 457, 459 (3d Cir. 2005), here the actual issue of the assessment of damages was litigated at a hearing on June 30, 2014 before Judge Shirdan-Harris. Pl. Brief Ex. D.

The Philadelphia Court of Common Pleas essentially bifurcated the case such that the issue of assessment of damages was actually litigated. See Pl. Brief Ex. E ("After an Assessment of Damages hearing, judgment is entered in the amount of $50,000.00 for Plaintiff and against Defendant, Alexander Funtow."). Thus, notwithstanding the default judgment against Funtow, there was a final adjudication on the merits of the issue of damages.[4]

Third, the party against whom collateral estoppel has been asserted was a party in the prior case. See Shaffer, 673 A.2d at 874 (describing the third prong of the four-part test). Neither party disputes that defendant State Farm is attempting to use the doctrine of collateral estoppel against plaintiff John Byars, also the plaintiff in the state court action.

Fourth, the party against whom collateral estoppel has been asserted had a full and fair opportunity to litigate the issue in the prior proceeding. See Shaffer, 673 A.2d at 874 (describing the fourth prong of the four-part test). Plaintiff sued Funtow in the Philadelphia Court of

---

[4] See, e.g., GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co., 2012 WL 1164994, *8 (M.D. Pa. Apr. 9, 2012) (Conner, J.) (determining that an arbitration award was not a default award because, although one party did not participate, the arbitration panel made findings of fact and reached conclusions of law based upon the evidence). Though GGIS dealt with a possible default judgment in the res judicata context, where default judgments can support such a claim, it illustrates that an award entered on the merits is not a default award. See also Restatement (Second) of Judgments § 27, comment d (1982) (explaining that an issue is actually litigated when it is raised, submitted for determination, and determined); but see Restatement (Second) of Judgments § 27, comment e (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").

Common Pleas, and, after obtaining a default judgment against Funtow, presented evidence at an assessment of damages hearing as to the nature and scope of his injuries. Plaintiff maintains that he "did not have a full opportunity to litigate the issue of 'negligence versus assault' causation in the State Court action," since he took "a streamline [sic] approach addressing only those injuries sustained in the automobile accident," and therefore "did not have a full and fair opportunity to defend against those accusations in the uncontested testimony provided in the underlying case." Pl. Resp. at 3. Essentially, plaintiff argues that since no one challenged his account of his injuries, he wasn't forced to explain the difference between the injuries sustained in the accident and the injuries sustained in the subsequent assault.

Plaintiff's testimony about his injuries was not subject to adversarial testing, but the potential unfairness of that one-sided argument breaks in plaintiff's favor. Plaintiff essentially had an open, unimpeded platform from which he could present evidence about his injuries, and he took that opportunity to testify, at length, with supporting documentation, about those injuries. That plaintiff did not take the opportunity to argue against himself, or against an absent opponent, about whether his injuries were from the negligent accident or subsequent assault does not mean that he did not fully and fairly litigate the issue of his damages from the accident.

Plaintiff argues that State Farm is using collateral estoppel offensively, and therefore, in addition to the Shaffer test, we should evaluate the issue of collateral estoppel under the four-prong test in Toy v. Metropolitan Life Ins. Co., 863 A.2d 1 (Pa. Super. Ct. 2004).[5] Plaintiff

---

[5] Plaintiff cites Toy to argue that, when a party attempts to use collateral estoppel offensively, Pennsylvania courts also consider whether the party attempting to use the doctrine had an opportunity to join the earlier action and whether the party against whom the doctrine is being used had an incentive to vigorously prosecute the first action. Pl. Resp. at 3. In Toy, the Pennsylvania Superior Court explained that "when a plaintiff seeks to employ the doctrine offensively, courts must also consider whether (1) plaintiff had an opportunity to join the earlier action, (2) the defendant had an incentive to defend the first action vigorously, (3) the judgment

argues, using Toy, that State Farm's opportunity to intervene in the state court action and

plaintiff's incentive to prosecute his case vigorously "weigh in favor of disallowing the

doctrine." Pl. Resp. at 3.

Here, we have the apparently unusual situation where the defendant seeks to estop the

plaintiff from re-litigating an issue the plaintiff seems to have already won. See Parklane

Hosiery, 439 U.S. at 329 ("In both the offensive and defensive use situations, the party against

whom estoppel is asserted has litigated and lost in an earlier action.") (emphasis added). State

Farm seeks to estop plaintiff from re-litigating an issue that it alleges was fully and finally

litigated in an action which ended in plaintiff's own favor.

Perhaps as a result of this unique posture, plaintiff takes exception to State Farm taking

up a sword instead of a shield in its own defense. Pl. Resp. at 3 ("State Farm is really presenting

an 'offensive' collateral estoppel challenge.").  But we do not accept plaintiff's characterization

of State Farm's use of collateral estoppel as "offensive". State Farm has been sued by the

plaintiff, and now seeks to preclude the plaintiff from re-litigating an issue he already raised and

successfully litigated against another defendant. That plaintiff prevailed in the state court action

does not change State Farm's posture with respect to collateral estoppel. State Farm is trying to

stop plaintiff from re-litigating the issue of damages at all, which presumably it would do had

plaintiff lost on the issue of damages in the state court and then tried to re-litigate here. An

analysis of the Toy factors is thus unnecessary.

---

relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments
in favor of the defendant, and (4) the second action would afford the defendant procedural
opportunities unavailable in the first action that could produce a different result." Toy, 863 A.2d
at 15.

We therefore find, in accordance with Shaffer, that the doctrine of collateral estoppel applies to the issue of the amount of damages the plaintiff was awarded as a result of the accident with the uninsured motor vehicle.

Since collateral estoppel applies to the issue of damages, we will grant in part defendant State Farm's motion for partial summary judgment and find that plaintiff is collaterally estopped from re-litigating the issue of damages as a result of the accident with the uninsured motor vehicle. We deny defendant State Farm's motion for partial summary judgment to the extent that it seeks to construe the $50,000 judgment as a cap on damages. Rather, plaintiff is collaterally estopped from litigating his damages from the accident because the state court action fully and finally determined his damages to be $50,000.

Whether or not he is entitled to recover that amount from State Farm under his uninsured motorist coverage -- solely by virtue of the prior state court action -- is a separate question, which we now address.

V.      **Plaintiff's Motion for Summary Judgment**

Plaintiff argues that he is entitled to summary judgment as a matter of law based on the prior state court action and principles of res judicata, or claim preclusion. See Pl. Brief at 8 ("As all pertinent issues in this coverage action have been determined, judgment should be entered for Mr. Byars as a matter of law.").

Because we have jurisdiction over this case pursuant to 28 U.S.C. § 1332, we must apply Pennsylvania law on res judicata. See O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1064 (3d Cir. 1991) (explaining that determining whether a district court is barred by res judicata because of a state court judgment requires looking to the law of the adjudicating state); Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988) ("A federal court applying preclusion principles is bound by

the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state court judgment

the same effect as would the adjudicating state.") (footnotes omitted).

According to Pennsylvania law, res judicata applies "when there exists an identity of

issues, an identity of causes of action, identity of persons and parties to the action, and identity of

the quality or capacity of the parties suing or being sued." In re Iulo, 766 A.2d 335, 337 (Pa.

2001) (citing Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 668 (1975)). This means that

the two actions must share an identity of: (1) the thing sued upon or for, (2) cause of action, (3)

persons or party to the action, and (4) capacity of the parties to sue or be sued. O'Leary, 923 F.2d

at 1065.

Res judicata does not apply to the case at hand because there is no identity of the persons

or parties to the action between the state court action and this case. Plaintiff did not sue State

Farm in the state court action; he chose to sue State Farm in a separate lawsuit. Nor was State

Farm, as plaintiff argues, "a privy of the uninsured motorist." Pl. Brief at 8. State Farm was

plaintiff's insurer, not Funtow's. Funtow was uninsured.

Notwithstanding plaintiff's Policy with State Farm, in the state court action plaintiff and

State Farm were not in privity because State Farm's interest would have been adverse to

plaintiff's interest. See Ranger Ins. Co., 800 F.3d at 331 (explaining that Pennsylvania law holds

insurers and their insureds to be in privity for collateral estoppel purposes, except when the

insurer and its insured had conflicting interests in the prior adjudication); Levitz v. Nationwide

Ins. Co., 167 F. Supp. 2d 748, 750 (E.D. Pa. 2001) (same). State Farm's interest would have

been to minimize plaintiff's recoverable damages against Funtow as a result of the motor vehicle

incident, since State Farm would have had to pay plaintiff's compensatory damages from that

accident since it was with an uninsured motor vehicle. Thus, State Farm was not in privity with plaintiff in the state court action.[6]

Further, by the Policy's own terms, which we are permitted to interpret, see Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 391 (3d Cir. 2012) (explaining that under Pennsylvania law the interpretation of an insurance contract is a matter of law for the courts to decide), State Farm is not bound by the judgment against Funtow. See Pl. Brief Ex. F at 19 ("We [State Farm] are not bound by any…judgment obtained without our written consent; and . . . default judgment against any person or organization other than us.") (emphasis omitted).

Res judicata does not apply to the case at hand with respect to State Farm and does not support judgment for plaintiff as a matter of law. We will therefore deny plaintiff's motion for summary judgment.

## VI.     Plaintiff's Motion to Amend the Complaint

Plaintiff seeks leave to amend his complaint to assert a count of bad faith against State Farm. Pl. Motion at 3. Plaintiff attaches to his motion the proposed amended complaint, including a new Count II. Id. Ex. B at ¶¶ 17-21. In his motion, plaintiff explains the factual basis for his new Count as State Farm's conduct during discovery and continued refusal to provide uninsured motorist coverage for the October 3, 2009 incident based on the judgment plaintiff obtained against Funtow. Pl. Motion at 2-3.

---

[6] This conforms with the Policy's very terms, which contemplates the situation when an insured and insurer disagree about whether an insured is entitled to recover compensatory damages from the operator of an uninsured motor vehicle, and, if so, in what amount. See Pl. Brief Ex. F at 19. In that event, the insured is required to sue the insurer, the driver of the uninsured motor vehicle, and any other parties who may be liable for the insured's damages. Id. In that same provision, the insured is also required to "agree that we [State Farm] may contest the issues of liability and the amount of damages" at issue. Id. (emphasis omitted).

Fed. R. Civ. P. 15(a)(2) provides that, when amendment is not permitted as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." We have discretion to grant or deny a request for leave to amend, though we may not deny leave without any justifying reason. Foman v. Davis, 371 U.S. 178, 182 (1962). Still, we may deny leave to amend a complaint if (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) amendment would prejudice the other party. Id.; Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

An amendment is futile when the complaint, as amended, would not state a claim upon which relief could be granted. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (explaining that district courts assess futility by applying the Rule 12(b)(6) standard of legal sufficiency). Where a proposed amendment is frivolous, or advances a facially insufficient claim, we may deny leave to amend. Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468-469 (D.N.J. 1990) (citing 6 Wright, Miller & Kane, Federal Practice & Procedure § 1487 at 637-642 (2d ed. 1990)).

Our Court of Appeals has predicted that the Pennsylvania Supreme Court would adopt the definition of "bad faith" in the context of 42 Pa. Cons. Stat. § 8371 (1990) as set forth in Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680 (Pa. Super. Ct. 1984). See Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). In Terletsky, the Pennsylvania Superior Court defines bad faith on the part of an insurer as a frivolous or unfounded, though not necessarily fraudulent, refusal to pay the proceeds of a policy, when that refusal goes beyond negligence or bad judgment such that there is a dishonest purpose or breach of a known duty. Terletsky, 649 A.2d at 688 (citing Black's Law Dictionary 139 (6th ed. 1990)).

To prevail on a bad faith claim, the insured must prove that the insurer (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Babayan, 430 F.3d at 137 (citing Keefe v. Prudential Prop. & Cas. Ins., Co., 203 F.3d 218, 225 (3d Cir. 2000)). An insured alleging bad faith must prove it by clear and convincing evidence, and a mere insinuation of bad faith will not suffice. Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2001). Pennsylvania law provides that an insurer does not act in bad faith when it conducts a thorough investigation into a questionable claim. Babayan, 430 F.3d at 138. Further, since Section 8371 is intended to provide redress to an insured for an insurer's bad faith conduct in its capacity as an insurer, and not as a legal adversary in a lawsuit initiated by the insured, discovery violations do not fall within the statute's ambit. O'Donnell ex rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 908-09 (Pa. Super. Ct. 1999) (explaining that, while an insurer's bad faith conduct may occur while litigation is pending, such bad faith conduct would have to be in the nature of breaching the fiduciary or contractual duty owed by the insurer to the insured and not in the nature of a discovery violation).

Here, amendment would be futile as the amended complaint's Count II fails to state a claim upon which relief can be granted. In his motion to amend the complaint, plaintiff complains of State Farm's discovery conduct, including its objections during the deposition of the State Farm representative who took plaintiff's initial recorded statement after the motor vehicle incident, as well as certain redactions in State Farm's files. Pl. Motion at 2. These grievances are discovery disputes and not within the ambit of Section 8371. We will not grant plaintiff leave to amend his complaint to add a count of bad faith on this frivolous basis.

Plaintiff also alleges that State Farm's continued refusal to provide uninsured motorist coverage for the October 3, 2009 incident after the state court judgment constitutes bad faith. Id. at 3. State Farm bases its continued denial of uninsured motor vehicle benefits for the accident on its belief that it is not bound by the state court judgment, citing to the Policy's provisions regarding State Farm's consent to be bound. Such consent clauses are enforceable under Pennsylvania law and not contrary to public policy. See Sands v. Andino, 590 A.2d 761, 765-66 (Pa. Super. Ct. 1991) (explaining that such consent clauses are binding on insureds and that it does not violate public policy to enforce them against insureds who do not fulfill their duties under such clauses). State Farm, therefore, had a reasonable basis in law to refuse to pay plaintiff's state court judgment against Funtow when it had not consented in writing to the judgment and plaintiff had not obtained a default judgment against State Farm itself. State Farm's reasonable basis for denying benefits under the policy precludes prevailing on a claim of bad faith. We will therefore not grant plaintiff leave to amend his complaint to add a count of bad faith on this facially insufficient basis.

## VII.    Conclusion

Plaintiff is collaterally estopped by the state court action from re-litigating the issue of his damages from the motor vehicle incident with Alexander Funtow.  Plaintiff has not shown that the state court judgment, by itself, entitles him to judgment as a matter of law that State Farm must provide him with uninsured motorist coverage for the October 3, 2009 accident. Plaintiff's proposed amendment to his complaint would be futile.

We will therefore grant in part and deny in part State Farm's motion for summary judgment, deny plaintiff's motion for summary judgment, and deny plaintiff's motion to amend the complaint.

Because State Farm only moved for partial summary judgment on the issue of the amount of damages, there remains the question of whether State Farm is obligated, under the Policy, to provide uninsured motor vehicle coverage to plaintiff for the motor vehicle accident with Funtow. As this matter has been designated arbitrable, we will therefore direct the parties to Court-annexed arbitration for resolution under our Local Civil Rules of the remaining issues in this case.

An appropriate Order follows.

BY THE COURT:

_/s/ Stewart Dalzell, J._
Stewart Dalzell, J.